## Chicago Union Traction Company v. Olaf N. Dybvig.

1. ORDINARY CARE—*Whether Plaintiff Under the Circumstances Exercised Ordinary Care is a Question of Fact.*—Whether, under the circumstances, plaintiff exercised ordinary care in driving astride a rail of the defendant's street railway, without looking back or endeavoring to ascertain how near to him the car was, is a question of fact for the jury.

2. INSTRUCTIONS—*That Certain Facts Do Not Amount to a Failure to Exercise Due Care, Erroneous.*—An instruction which is equivalent to a statement by the court that though the jury might believe that the plaintiff had done and omitted to do all mentioned in the instruction, such conduct did not amount to a failure to exercise ordinary care, is reversible error.

Trespass on the Case, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge presiding. Heard in the Branch Appellate Court at the March term, 1902. Reversed and remanded. Opinion filed April 28, 1903. Rehearing denied May 19, 1903.

This is an appeal from a judgment of $12,500 rendered in an action brought by appellee to recover damages for an injury sustained by him through the alleged negligence of appellant.

Appellee was, upon a bright clear day, the streets being dry, October 24, 1899, driving a milk wagon, going westward on Wabansia avenue; arriving at California avenue he turned north in it, driving, he said, partly in the track and partly in the street car track, the wheels of his milk wagon being astride the easterly or north-bound car track. As he drove into California avenue, he looked to the south and saw one of appellant's electric cars just emerging from under an elevated railroad structure on the avenue about 400 feet to the south of where he then was. Without again looking or watching for the approach of the car, he drove northward on California avenue, gradually pulling further and further to the west until at the point where he attempted to turn west. The wheels of his wagon were nearly running in the easterly or north-bound track of appellant's line. Wabansia avenue does not cross California avenue directly. The center of that known as West

Wabansia avenue being 115 feet north of the center of East Wabansia avenue. Appellee testified that he did not drive between the car track and the curb because there were in Wabansia avenue two holes, the northerly of which was about twelve feet long, five feet wide and six or seven inches deep; that while he was driving northward on California avenue, he heard no bell ringing until just before he turned westward, and that warning was given by his brother; that in the street there were no other vehicles and he proceeded northward in California avenue for some 200 feet, his horse walking; that the first thought he had that anything was going to occur was when his brother, who was riding on the outside of the wagon standing upon the step, and partly facing toward the approaching car, said, " Look out, you will run into us;" that he, appellee, took it for granted that this remark was addressed to the motorman of the approaching car; that his horse was walking when his brother first spoke and he was walking when he spoke the second time, but faster; that when his brother first spoke he hurried the horse, that is, he called out "Get up," and shook the lines; that he did not look back to see when his brother first spoke; that the horse went probably two, or at the most three steps, before the second exclamation came, at a little faster walk; that he did not get into a trot at all; that there was not time enough to get into a trot; that when he was struck the front wheels were on the west rail of the track and that neither of the hind wheels had cleared the west rail of the track at the time of the collision.

Appellee's brother was all the while standing on the step of the wagon on the left hand side, that being opposite the open door way. He testified that he saw the car on California avenue approaching from the south just as it was entering under the elevated structure; that it was 437 feet from Wabansia avenue where appellee drove in on to California avenue; that as appellee drove north in California avenue the wheels of the wagon were astride the east rail of appellant's track; that appellee drove in that position

100 feet; that he then turned out west toward Wabansia avenue; that the wagon did not get off the east track; that it had just started to turn as it was struck; that when the electric car was fifty or sixty feet away, he raised his hand and said to the motorman, "Look out or you will run into us;" that he called out loud enough to be heard by the motorman; that the motorman did nothing when he spoke to him; that he did not put on the brakes or ring the bell; that the car was going unusually fast and this speed was not checked between the time witness raised his hand and the time the car struck the wagon; that when the car was within eight or ten feet of the wagon the motorman jumped off; that he had not applied the brakes and that he did not make any effort in any way to stop the car; that at the time the motorman jumped from the car it was going as fast as it was when the witness first saw it; that there was another man on the front platform, who also jumped off the car immediately following the motorman; that no effort was made to stop the car prior to the time he jumped off; that the other man did not touch the brakes in any way.

The motorman and conductor of the car and two passengers riding therein testified that as the car approached the wagon, the bell was rung; that the wagon as the car proceeded northward was proceeding on the side between the street car track and the curb; that when the car was within about twenty feet of the milk wagon it turned westward, going across the track in front of the car. The motorman and conductor testified that the brakes were applied, the power reversed and every possible effort made to stop the car.

As to the putting on of the brakes and the ringing of the bell, they were corroborated by two passengers. The trolley pole was not thrown off the wire by the collision and the car stopped because the brakes had been set and the power reversed. The cars seem to have come into collision with the left hind wheel of the wagon, pushing it along four or five feet and tipping it over. The motorman, conductor and a passenger testified that before the

wagon turned westward, as it proceeded northward, it was far enough east of the track to allow the car to pass with safety.

Appellee was severely injured by the collision, being rendered unconscious. As to whether he was permanently injured or seriously disabled, the evidence was most contradictory. It was undisputed that since the accident he had twice acted as a special policeman or guard on occasion or strikes, and had frequently attended dances. He testified that he did not dance. He had walked rapidly and otherwise had evinced a good deal of muscular activity and vigor.

JOHN A. ROSE and LOUIS BOISOT, attorneys for appellant; W. W. GURLEY, of counsel.

BENJAMIN F. RICHOLSON, attorney for appellee; C. STUART BEATTIE, of counsel.

MR. PRESIDING JUSTICE WATERMAN delivered the opinion of the court.

There being no teams or vehicles in the street and nothing to prevent the driving by appellee in the west-bound track or in the street west of the west-bound track, it appears extraordinary that having seen an electric car proceeding northward as he entered Wabansia avenue appellant should have continued to drive in the track along which he knew an electric car was proceeding without once looking back to see how near it was to him; and it seems most extraordinary that his brother, who, standing outside the wagon upon its steps and partially facing toward the south so that he could easily see the car, should not, as it was proceeding with great rapidity toward the wagon, have given any warning to appellee or to the car until it was, as he says, within fifty or sixty feet of the wagon. Other of appellee's witnesses testified that the car was proceeding northward as fast as electric cars go. Whether, under the circumstances, appellee exercised ordinary care in driving, as he says he did, astride the east rail of appellant's north-bound track, all the while pulling

toward the west, so that at the time of the collision his wagon was nearly tracking, without looking back or endeavoring to ascertain as his horse walked along how near to him the car was, is a question of fact.

Appellant asked that the following instruction be given:

"If the jury believe from the evidence that ordinary care on the part of the plaintiff for his own safety, under all the facts and circumstances in evidence, required him, before driving upon or attempting to cross defendant's track, if the jury believe from the evidence that he did drive upon or attempt to cross the same, to look out and ascertain whether the track was clear or whether a car was approaching, and if the jury believe from the evidence that the plaintiff, by the exercise of ordinary care, should have looked and ascertained whether the track was clear and whether or not a car was approaching, and if the jury further believe from the evidence that the plaintiff did not so look and ascertain whether the track was clear and whether or not a car was approaching, and that the plaintiff was injured in consequence of his failure, to so look and ascertain, if he did fail to so look and ascertain, then the court instructs the jury to find the defendant not guilty."

The court added to this the following:

"Provided the jury find from all the evidence that immediately before and at the time of the accident the plaintiff was not in the exercise of ordinary care for his own safety."

And as thus modified the court gave it to the jury. As modified it was equivalent to a statement by the court that though the jury might believe that the plaintiff had done and omitted to do all mentioned in the instruction, such conduct did not amount to a failure to exercise ordinary care. As given, the instruction was such an error that, under the evidence in this case, the judgment of the court below must be reversed.

Counsel for appellee say:

"Why court or counsel should seek by instruction to confuse the jury with a question of appellee's failure to look or ascertain the position of the car, when the proximity of the car was fully known to appellee according to

his own admission, is one of those things which only happen in personal injury suits, where the court gives almost any issuable instruction the defendant asks."

If the plaintiff knew all the while of the proximity of the electric car, and yet attempted to cross over the track in front of the car when it was so near that to do so was very dangerous, he failed to exercise ordinary care.

The judgment of the Superior Court is reversed and the cause remanded.